# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00202-CV

**Bobby Blu Greene, Appellant**

**v.**

**The State of Texas; The City of Dallas, Texas;**
**The Transit Authority of Dallas, Texas, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
### NO. D-1-GV-06-000183, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING

## O P I N I O N

Bobby Blu Greene appeals from the trial court's final judgment finding him personally liable for past due sales tax, penalties, and interest owed by Greene's Gold and Diamonds, Inc. ("Greene's Gold"), based on past forfeitures of Greene's Gold's corporate privileges. *See* Tex. Tax Code Ann. § 171.255 (West 2008). On appeal, Greene argues that he cannot be held personally liable for sales tax as an officer and director of Green's Gold because there was insufficient evidence that the Texas Comptroller of Public Accounts ("the Comptroller") followed the statutory requirements for providing notice of the forfeiture of corporate privileges. Greene also challenges the authority of the trial judge to sign the final judgment in this case after the expiration of her term of office. We affirm the trial court's judgment.

**BACKGROUND**

In September 1998, the Comptroller randomly selected Greene's Gold, a Dallas-area wholesale and retail jewelry business, for a sales tax audit. This audit originally encompassed the periods of February 1, 1995 through October 31, 1998, but was later extended to cover the periods of July 1, 1992 through July 31, 1999. Upon completing the audit, the Comptroller notified Greene's Gold that its audit results indicated a total sales tax liability of $1,121,471.81. Greene's Gold then requested a redetermination of its tax liability. The Comptroller granted this request and, as a result of the redetermination proceeding, amended Greene's Gold's audit results to delete one of the two fraud penalties that had been assessed, remove two audit periods from the assessment, and reduce the amount of unreported gross sales. In September 2005, the Comptroller notified Greene's Gold that its redetermination was complete and that its amended tax liability totaled $1,479,837.29.[1]

In December 2005, Greene's Gold entered federal bankruptcy proceedings, thus precluding the relevant taxing authorities from suing Greene's Gold directly to recover the tax amounts due. As a result, in February 2006, the State of Texas, the City of Dallas, and the Transit Authority of Dallas (collectively, "the State"), filed suit against Greene and Legacy Exquisite Jewelers, Inc. ("Legacy") in an attempt to collect the amount of Greene's Gold's sales tax liability. The State sued Greene individually as an officer and director of Greene's Gold under tax code section 171.255, which provides that officers and directors may be held personally liable for debts

---

[1] Despite the downward adjustments made by the Comptroller after its redetermination of the audit results, the accumulation of interest caused Greene's Gold's amended tax liability to exceed the original liability amount.

incurred by a corporation during a period in which corporate privileges have been forfeited.[2] *See id.*

The State sought to impose tax liability against Legacy, a jewelry business owned by Greene's mother and incorporated in 2004, as a successor to Greene's Gold's tax liability and as a fraudulent transferee, under the theory that Greene's Gold had sold its assets to Legacy in a sham transaction for the purpose of avoiding tax liability. *See id.* § 111.020 (West 2008) (purchaser of business may be held liable for seller's tax liability in absence of certain precautionary measures), § 111.024 (West 2008) (person acquiring business through fraudulent transfer or sham transaction is liable for taxes owed by seller).

A bench trial was held in October 2008, during which the State presented evidence that Greene's Gold's corporate privileges were forfeited on four separate occasions during the audit period and that during these periods of forfeiture, the total amount of tax, interest, and penalties assessed against Greene's Gold totaled $1,095,842.95. The State also presented evidence related to its theories of successor liability in connection with Legacy. After hearing the evidence, the trial court rendered judgment against Legacy for Greene's Gold's full tax liability, an amount of $1,736,470.13. The court also found Greene jointly and severally liable for the portion of that amount that was incurred during periods of forfeiture, $1,095,842.95.[3] The trial court found Legacy and Greene jointly and severally liable for $56,000 in attorneys' fees, plus conditional appellate

---

[2] Greene was the sole officer and director of Greene's Gold.

[3] The judgment also assessed prejudgment interest against Legacy at $181.34 per day after October 13, 2008, the date through which liability was calculated for purposes of the Comptroller's trial certificate. *See* Tex. Tax Code Ann. § 111.013 (West 2008) (providing that in tax collection suit, "a certificate of the comptroller that shows a delinquency is prima facie evidence" of stated amount of tax, penalties, and interest). Greene was found jointly and severally liable for prejudgment interest in the amount of $116.05 per day.

3

attorneys' fees. The trial court made findings of fact and conclusions of law to support its judgment, and this appeal followed.[4]

In his first two issues on appeal, Greene argues that the trial court erred in imposing officer and director liability against him under section 171.255 because the State failed to establish that the Comptroller had fully complied with the notice requirements of section 171.256. *See id.* § 171.256 (West 2008) (requiring Comptroller to notify corporation at least 45 days before forfeiture of corporate privileges). In his third issue on appeal, Greene contends that the trial judge who presided over the bench trial in this case did not have authority to sign the final judgment because she retired from office on December 31, 2008, but did not sign the final judgment until January 7, 2009.

**STANDARD OF REVIEW**

Greene's arguments regarding the notice requirement of tax code section 171.256 turn on a question of statutory construction, which we review de novo. *See City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008).

The qualification of a retired judge to preside over a case is a jurisdictional issue that cannot be waived and may be raised at any time. *See Houston Gen. Ins. Co. v. Ater*, 843 S.W.2d 225, 227 (Tex. App.—El Paso 1992, no writ). The issue of whether a judge had authority to act is a question of law subject to de novo review. *See id.*

---

[4] Legacy did not appeal the trial court's judgment.

**DISCUSSION**

*Authority of District Judge to Sign Final Judgment*

Because Greene's argument that the district judge lacked authority to sign the final judgment implicates the trial court's jurisdiction, we will resolve this issue before turning to Greene's arguments under the tax code. Judge Cooper, the district judge who presided over the bench trial in this case in October 2008, retired at the end of her term of office on December 31, 2008. At the close of evidence on October 15, 2008, Judge Cooper requested additional briefing from the parties on certain issues, stating, "[T]hen I'll issue a letter ruling and request that one of you prepare an order and circulate it pursuant to our local rules for approval as to form." The parties submitted additional briefing as requested, and on December 2, 2008, Judge Cooper issued a letter to the parties stating that "judgment is rendered for the plaintiffs on all claims and plaintiffs are awarded their attorneys' fees. [Counsel for the State] is requested to prepare a form of judgment, circulate to all counsel for approval as to form, and submit to the court for signature." This letter was filed with the district clerk, and was noted on the court's docket sheet as, "Letter from Margaret Cooper." Judge Cooper signed the final judgment on January 7, 2009, and issued findings of fact and conclusions of law on March 13, 2009. While Judge Cooper made an election under section 75.001 of the government code to sit by assignment after her retirement, it is undisputed that she was not sitting by assignment at the time she signed either the final judgment or the findings of fact and conclusions of law. *See* Tex. Gov't Code Ann. § 75.001 (West 2005) (providing that judicial retiree may elect to be designated senior judge and to continue to serve as judicial officer); § 75.002 (West 2005) (providing that retired district judge may sit by assignment by presiding judge of administrative judicial region).

5

Greene contends that because Judge Cooper was retired and was not sitting by assignment at the time the final judgment was signed, she lacked authority to sign the judgment and the judgment is therefore void as a matter of law. *See Ex parte Eastland*, 811 S.W.2d 571, 572 (Tex. 1991) (per curiam) (holding that trial court's order was void because visiting judge exceeded temporal scope of his assignment); *Mapco, Inc. v. Forrest*, 795 S.W.2d 700, 703 (Tex. 1990) (per curiam) ("A judgment is void . . . when it is apparent that the court rendering the judgment had . . . no capacity to act as a court."). However, "the powers of a District Judge do not cease in their entirety upon h[er] resignation or the expiration of h[er] term of office. A judge whose term of office has ceased may perform clerical duties such as the making of Findings for the purpose of perfecting an appeal." *Crawford v. Crawford*, 315 S.W.2d 190, 192 (Tex. Civ. App.—Waco 1958, no writ) (holding that where judge rendered judgment and noted it on docket sheet during term of office, but signed written judgment after vacating office, his "judicial function continued and survived after he vacated the office of District Judge, as necessary to lend efficacy, validity and legality to the act of signing the judgment"). Thus, if Judge Cooper rendered judgment prior to the expiration of her term of office on December 31, 2008, she retained judicial authority after her retirement to sign the form of the judgment and the findings of fact and conclusions of law. *See id.*

The State takes the position that Judge Cooper's letter to the parties, written and filed with the clerk during her term of office, represented the rendition of final judgment and therefore preserved her authority to later sign the form of the final judgment and the findings of fact and conclusions of law. Greene argues in response that a letter to the parties cannot represent the rendition of judgment, citing to cases in which Texas courts have held that a letter to the parties does not represent a final, appealable order. *See Goff v. Tuchscherer*, 627 S.W.2d 397, 398-99

6

(Tex. 1982) (stating that appellate deadlines must run from day judge signs judgment, decision, or order, and that letters to counsel are "not the kind of documents" from which appeal may be taken); *see also Perdue v. Patten Corp.*, 142 S.W.3d 596, 603 (Tex. App.—Austin 2004, no pet.) (holding that letter to counsel did not "constitute the formal, signed order" contemplated by rule of civil procedure 329b(c) for determination of motion for new trial). However, the issue of whether the form of judgment is final for purposes of starting the timetable for appellate deadlines is distinct from the question of whether judgment has actually been rendered. *See Texas Life Ins. Co. v. Texas Bldg. Co.*, 307 S.W.2d 149, 154 (Tex. Civ. App.—Fort Worth 1957, no writ) ("[F]rom the standpoint of 'timetables' for appeal, judgments have a peculiar character. As to such, it is in general the 'record' of the judgment which controls rather than the judgment itself."). For example, while judgment may be *rendered* orally, a written and signed order recording the judgment is necessary for purposes of "measuring time for appellate steps and for determining a motion for new trial during the period of the court's plenary jurisdiction." *Perdue*, 142 S.W.3d at 602.

In short, the rendition of judgment and the signing of a written judgment are not synonymous. *Burns v. Bishop*, 48 S.W.3d 459, 465 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (citing Tex. R. Civ. P. 306a(1)). Judgment is rendered when the trial judge declares her decision of law upon the matters at issue, either in open court or by memorandum filed with the clerk. *See S&A Restaurant Corp. v. Leal*, 892 S.W.2d 855, 857 (Tex. 1995). Once judgment has been rendered, subsequent acts of drafting and signing a written form of judgment are merely "preparatory, administrative acts that would authenticate the record of the court's rendition." *Burns*, 48 S.W.3d at 466 (emphasis omitted). Thus, if a judge renders judgment during her term of office, that judge

7

may then perform "the ministerial act of signing the instrument of judgment," even after her term of office has expired. *See Texas Life Ins. Co.*, 307 S.W.2d at 154 ("In so far as the signing of the form of judgment on January 25, 1957, was concerned, Judge Fulgham's judicial function (existent on and before December 31, 1956) survived and continued as necessary to lend efficacy to the act.").

A letter to the parties that describes the court's findings and asks the parties to prepare a judgment, while insufficient to serve as an appealable order, can serve as the rendition of judgment if it is filed with the clerk. *See Abarca v. Roadstar Corp. of Am.*, 647 S.W.2d 327, 327-28 (Tex. App.—Corpus Christi 1982, no writ). In *Abarca*, the court held that a letter to the parties, setting forth the trial court's decision and requesting that a judgment be prepared, "was the rendering of the judgment in this case." *Id.* at 328. Because the judge who wrote the letter died before signing the prepared judgment, his successor in office signed it instead. *Id.* The court of appeals determined that the new trial judge could properly sign the judgment based on the findings expressed in his predecessor's letter, as the letter was the actual rendition of judgment and the successor's "act in signing the formal document called the judgment merely recorded this rendition." *Id.* In reaching this conclusion, the court emphasized the fact that the letter to the parties "certainly qualifies as a memorandum, and it was filed with the clerk." *Id.* (citing *Comet Aluminum Co. v. Dibrell*, 450 S.W.2d 56, 58 (Tex. 1970) (observing rule that judgment is rendered when officially announced, either orally in open court or by memorandum filed with clerk)).

The question, then, is whether Judge Cooper's December 2 letter to the parties represented the rendition of judgment in this case, so that her subsequent act of signing the judgment was a ministerial act that "merely recorded this rendition." *Id.* If so, she retained judicial capacity

8

to sign the judgment and findings of fact, even after the expiration of her term of office. *See Texas Life Ins. Co.*, 307 S.W.2d at 154; *Crawford*, 315 S.W.2d at 192. First, we note that like the letter in *Abarca*, Judge Cooper's letter qualifies as a memorandum and was filed with the clerk. The body of the letter, in its entirety, is as follows:

> The above-captioned matter came on for trial on the merits on October 13 - 15, 2008. Having heard the evidence and considered the arguments of counsel, as well as the post-trial briefing, *judgment is rendered* for the plaintiffs on all claims and plaintiffs are awarded their attorneys' fees. [Counsel for the State] is requested to prepare a form of judgment, circulate to all counsel for approval as to form, and submit to the court for signature.

(Emphasis added.) The present-tense language of Judge Cooper's letter, stating that "judgment is rendered," indicates her intent to render judgment at that time, rather than at some point in the future once the form of judgment had been prepared. We "give deference to the trial court's factual determination regarding whether it previously rendered judgment." *In re Dickerson*, 259 S.W.3d 299, 301 (Tex. App.—Beaumont 2008, pet. denied). Judge Cooper's letter also references the preparation of "a form of judgment," reinforcing the distinction between the act of rendition and the ministerial act of recording the previously rendered judgment.

Greene argues that Judge Cooper's letter cannot represent the rendition of judgment because it does not specifically state the monetary amounts awarded. While the terms of a final judgment must be certain and definite, the "total amount of money need not be stated in dollars and cents if the correct amount can be ascertained by the pleadings." *Jones v. Liberty Mut. Ins. Co.*, 733 SW.2d 240, 242 (Tex. App.—El Paso 1987, no writ); *see also Hill v. Lyles*, 81 S.W. 559, 559 (Tex. Civ. App.—Austin 1904, no writ) ("We understand the rule to be that, if the amount of the

9

judgment can be made certain by reference to the pleadings, it is sufficient."). Further, when the judgment "makes the figure which the clerk is to place in the writ of execution determinable by ministerial act, the judgment cannot be said to lack definiteness." *International Sec. Life Ins. Co. v. Spray*, 468 S.W.2d 347, 350 (Tex. 1971).

Because of the unique nature of a sales tax collection proceeding, the specific amount of the judgment could easily be ascertained by reference to the pleadings. Section 111.013 of the tax code provides that in a suit involving the establishment or collection of certain taxes, including sales tax, a delinquency certificate from the Comptroller is prima facie evidence of:

(1) the stated tax or amount of the tax, after all just and lawful offsets, payments, and credits have been allowed;

(2) the stated amount of penalties and interest;

(3) the delinquency of the amounts; and

(4) the compliance of the comptroller with the applicable provisions of this code in computing and determining the amount due.

Tex. Tax Code Ann. § 111.013(a) (West 2008). The record in this case contains two relevant delinquency certificates from the Comptroller—one setting forth the sales tax liability of Legacy as a transferee of Greene's Gold and one setting forth Greene's individual liability under section 151.255. The form of judgment ultimately signed by Judge Cooper incorporates the amounts listed on these delinquency certificates, stating that the amounts awarded "reflect the state, city, and transit authority sales tax, penalties, and interest shown on the *Trial Certificate* calculated through October 13, 2008." The prejudgment interest listed on the form of judgment is also

10

consistent with the delinquency certificates, which provide that after October 13, 2008, additional interest will accrue at $181.34 per day for Legacy and $116.05 per day for Greene. In rendering judgment in favor of the State on all claims, Judge Cooper's letter necessarily awarded the amounts of taxes, penalties, and interest stated on the Comptroller's delinquency certificates.

In addition to the delinquent tax amounts, Judge Cooper's letter also awards the State its attorneys' fees. While the appropriate attorneys' fee award is not ascertainable from the Comptroller's delinquency certificate, at the time the letter was written, there remained no question of fact for the trial court to resolve other than the discretionary matter of whether to award fees at all. The parties stipulated at trial to the amount of attorneys' fees incurred by the State, the appropriate amount of conditional appellate fees, and the reasonableness and necessity of such fees.[5] Greene declined to stipulate to his liability for fees, given his position that he was not subject to director and officer liability, but he agreed that in the event fees were awarded, the amount sought by the State—$56,000 for trial and a total of $5,000 for appeals to this Court and the supreme court—was reasonable and necessary. Accordingly, the only unsettled matter left before the trial court was whether to award the stipulated fees to the State. By awarding the State its attorneys' fees, Judge Cooper's letter necessarily awarded the amounts stipulated to by the parties. These amounts were ultimately reflected in the form of judgment.

Based on the unique facts of this case, in which the amount of tax liability was clearly delineated by the Comptroller's delinquency certificate and the appropriate amount of an attorneys'

---

[5] The State was entitled to recover attorneys' fees under government code section 2107.006, which provides that "the attorney general may recover reasonable attorney fees" in any proceeding in which the State seeks to collect or recover a delinquent obligation. Tex. Gov't Code Ann. § 2107.006 (West 2008).

fee award had been resolved by stipulation of the parties, we conclude that Judge Cooper's letter, stating that "judgment is rendered" for the State on all claims, was sufficiently definite to constitute the rendition of judgment. *See Jones*, 733 S.W.2d at 242; *Hill*, 81 S.W. at 559.

Greene also argues that Judge Cooper's failure to enter judgment on the court's docket sheet prior to the expiration of her term is dispositive as to her capacity to sign the final judgment, citing *Martinez v. Martinez*, 759 S.W.2d 522 (Tex. App.—San Antonio 1988, no writ). In *Martinez*, the court stated that "a district judge who has been properly replaced by a successor has the authority to sign a written judgment after he has been replaced, provided he heard the cause and entered his judgment in the docket sheet of the cause before the expiration of his term." *Id.* at 523. The court went on to hold that because the judge in question had not entered his judgment in the docket sheet before the expiration of his term, he had no authority to sign the judgment after his retirement. *Id.* The court did not hold, however, that entry of judgment on the docket sheet is the sole means by which a retired judge may retain the authority to sign a previously rendered judgment. The judge in *Martinez* failed to render judgment during his term of office, by letter to the parties or otherwise, but simply took the matter under advisement at the close of trial and then, over a year after leaving office, signed a final judgment. *Id.* Thus, the judge lacked capacity to sign the final judgment, not because he failed to enter his judgment on the docket sheet, but because he failed to render judgment in any manner during his term of office. *See id.* (citing *Texas Life Ins. Co.*, 307 S.W.2d at 154 (holding that docket entry, while generally insufficient to constitute judgment itself, can be evidence that judgment has been rendered)). As previously discussed, Judge Cooper, unlike the judge in *Martinez*, did render judgment by letter to the parties during her term of office.

12

Furthermore, Judge Cooper's act of rendering judgment *was* entered into the court's docket sheet, with the notation, "Letter from Margaret Cooper." Accordingly, we are not persuaded by Greene's argument that *Martinez* is controlling on the issue of whether Judge Cooper retained judicial authority to sign the final judgment.

As the Texas Supreme Court held in *Storrie v. Shaw*, "We fail to see any sound objection to the conclusion that upon the retirement of a judge the judicial function survives and continues so far as necessary for him to complete that which reflects the operations of his own mind or relates to his own conduct in the particular case." 75 S.W. 20, 22 (Tex. 1903). Because the "judicial function survives" in a retired judge for the purpose of actions necessary to carry out a judgment rendered during her term of office, *see id.*, and because Judge Cooper's December 2 letter to the parties represents the rendition of judgment in this case, we hold that Judge Cooper retained the authority to sign the judgment and findings of fact and conclusions of law after expiration of her term of office. Greene's third issue on appeal is overruled.

*Officer & Director Liability under the Tax Code*

In his remaining issues on appeal, Greene argues that the trial court erred in imposing officer and director liability against him under section 171.255 of the tax code. Specifically, Greene argues in his first issue that the notice provision in section 171.256 of the tax code creates a statutory prerequisite to the forfeiture of corporate privileges and that because the State failed to prove the Comptroller's compliance with section 171.256, it cannot seek to impose officer and director liability against him under section 171.255. In his second issue, Greene argues that the trial court erred in

13

relying on a "presumption of regularity" to determine that the Comptroller did in fact satisfy the notice requirements of section 171.256.

Section 171.251 of the tax code authorizes the Comptroller to forfeit the corporate privileges of a corporation that fails to file its franchise tax report or pay its franchise taxes. Tex. Tax Code Ann. § 171.251 (West 2008). Section 171.256 describes the procedure for providing notice of an impending forfeiture:

> (a) If the comptroller proposes to forfeit the corporate privileges of a corporation, the comptroller shall notify the corporation that the forfeiture will occur without a judicial proceeding unless the corporation:
>
> (1) files [its franchise tax report within 45 days]; or
>
> (2) pays [its delinquent franchise tax and any penalties within 45 days].
>
> (b) The notice shall be written or printed and shall be verified by the seal of the comptroller's office.
>
> (c) The comptroller shall mail the notice to the corporation at least 45 days before the forfeiture of corporate privileges. The notice shall be addressed to the corporation and mailed to the address named in the corporation's charter as its principal place of business or to another known place of business of the corporation.
>
> (d) The comptroller shall keep at the comptroller's office a record of the date on which the notice is mailed. For the purposes of this chapter, the notice and the record of the mailing date constitute legal and sufficient notice of the forfeiture.

*Id.* § 171.256. Greene takes the position that the State failed to demonstrate the Comptroller's compliance with section 171.256 because it did not present sufficient evidence that a notice of forfeiture was mailed to Greene's Gold at its principal place of business. Accordingly, Greene

14

argues, the State cannot hold him individually liable under section 171.255. Section 171.255 provides, in relevant part:

> If the corporate privileges of a corporation are forfeited for the failure to file a report or pay a tax or penalty, each director or officer of the corporation is liable for each debt on which the report, tax, or penalty is due and before the corporate privileges are revived. The liability includes liability for any tax or penalty imposed by this chapter on the corporation that becomes due and payable after the date of the forfeiture.

*Id.* § 171.255(a).

At trial, the State introduced Comptroller records showing that Greene's Gold's corporate privileges were forfeited for failure to satisfy franchise tax requirements on four separate occasions during the audit period. Greene does not dispute that Greene's Gold qualified for forfeiture under section 171.251 for each of the four time periods in question, but argues that because the State failed to prove the Comptroller's compliance with the notice requirements of section 171.256, it failed to prove that forfeiture properly occurred. Because Greene's arguments are based on the premise that the notice requirements of section 171.256 are conditions precedent to the imposition of officer and director liability under section 171.255, we will first address this issue before considering whether such compliance was established at trial.

## I.      *Conditions Precedent to Officer and Director Liability*

There is no indication in the plain language of sections 171.255 or 171.256 that officer and director liability is contingent upon pre-forfeiture notice to the corporation. This Court recently addressed a similar issue in *State v. Montano*, holding that while the Texas Ethics Commission is statutorily required to provide notice of late-filed financial disclosure and campaign

15

finance reports, notice is not a prerequisite for the imposition of penalties for late-filed reports. 313 S.W.3d 854, 857-58 (Tex. App.—Austin 2010, no pet.). In reaching this conclusion, this Court stated:

> The statute is the notice of both the requirement and the deadline. Missing the statutory deadline implicates a statutory penalty. The fact that the TEC is required to send notice of a determination that a penalty will be imposed does not affect the fact that filers are statutorily on notice of the requirement to file, the deadline for filing, and the penalties for late filing.

*Id.* at 857. Similarly, officers and directors are statutorily on notice that a corporation's failure to fulfill franchise tax requirements will result in the forfeiture of corporate privileges, which in turn will subject them to personal liability for debts incurred during the time of forfeiture. *See* Tex. Tax Code Ann. §§ 171.251, .255. The connection between the notice requirement of section 171.256 and the personal liability imposed under section 171.255 is in fact weaker than the connection between the provisions at issue in *Montano*, as the election code at least requires that notice be given to the same party against whom penalties would be assessed. In contrast, the tax code contains no requirement that the Comptroller notify the officers and directors themselves of the impending forfeiture of corporate privileges, requiring only that notice be mailed to the corporation. *See id.* § 171.256.[6]

---

[6] Officers and directors may avoid liability for debts of the corporation incurred over their objection or without their knowledge. *See* Tex. Tax Code Ann. § 171.255 (West 2008). The trial court determined that Greene did not qualify for this exception to personal liability, and Greene does not argue otherwise on appeal.

In support of his argument that the notice requirement is a condition precedent to officer and director liability, Greene cites *Virtual Healthcare Services, Ltd. v. Laborde*, 193 S.W.3d 636 (Tex. App.—Eastland 2006, no pet.). The court in *Laborde* held that a corporation's officer and director, a Louisiana resident, was not subject to personal jurisdiction for purposes of personal liability under section 171.255 because the Comptroller had improperly mailed the forfeiture notice under section 171.256 to an address that did not qualify as the "principal place of business" or "another known place of business of the corporation." *Id.* at 645 (citing Tex. Tax Code Ann. § 171.256(c)). Citing this failure to comply with the notice requirements, as well as the evidence that the officer had no *actual* notice of the forfeiture, the court held that an exercise of jurisdiction over the officer would not comport with traditional notions of fair play and justice. *Id. Laborde* is distinguishable from the present case in two significant ways. First, the holding in *Laborde* did not turn on the statutory language of the tax code, but on the principle that the exercise of personal jurisdiction over a nonresident defendant must "comport with traditional notions of fair play and substantial justice" in order to satisfy due process. *Id.* at 644; *see also International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Second, the *Laborde* holding was based in part on the evidence that the officer never received actual notice of the forfeiture. *See* 193 S.W.3d. at 645 (determining that exercise of personal jurisdiction would be unjust because "Laborde did not have knowledge of the forfeiture when [the corporation] incurred the debt—*either* by proper statutory notice from the comptroller to [the corporation] *or other notice*") (emphases added). In the present case, we are not confronted with the constitutional safeguards related to the exercise of personal jurisdiction over nonresident defendants, nor is there any question that Greene received actual notice

17

of the forfeitures of Greene's Gold's corporate privileges, given that the necessary steps were taken to revive privileges after each forfeiture and that Greene was the sole officer and director of the corporation. Accordingly, we are not persuaded that *Laborde* compels any particular disposition of the questions presented by the instant case.

We may not judicially amend a statute to add new requirements. *See Lee v. City of Houston*, 807 S.W.2d 290, 295 (Tex. 1991). Had the legislature intended to make officer and director liability under section 171.255 contingent on compliance with the notice requirements of section 171.256, it could have done so. Otherwise, we are constrained to the plain language of the statute, which provides only that officers and directors are liable for debts of the corporation incurred during periods of forfeiture, subject to certain exceptions not applicable to the present case. *See* Tex. Tax Code Ann. § 171.255. As a result, we hold that the notice requirements of section 171.256 are not conditions precedent to officer and director liability under section 171.255.

Greene also argues that because sections 171.255 and 171.256 contain no provision for notice to the officers and directors themselves before personal tax liability attaches, they violate due process and are facially unconstitutional. He further contends that these statutory provisions are unconstitutional as applied to him in this case because the trial court did not require the State to prove that notice had been sent to the address required by section 171.256, and by extension, to Greene personally.[7]

---

[7] This argument appears to be based on the notion that notice mailed to the corporation's principal place of business as required by section 171.256 could also be considered notice to the corporation's officers and directors. Specifically, Greene argues, "Unless Sections 171.255 and 171.256(c) are construed in a manner to provide notice to both the corporation at the address stated in the statute and to its officers and directors at that same address, both Sections 171.255 and 171.256 are unconstitutional as applied by the trial court in this case."

18

The imposition of tax liability without prior notice and a hearing does not represent an unconstitutional deprivation of due process when the tax code allows for a de novo review of the party's tax liability in state court. *See Texas Alcoholic Beverage Comm'n v. Macha*, 780 S.W.2d 939, 942 (Tex. App.—Amarillo 1989, writ denied). A trial de novo affords "an adequate legal remedy to the taxpayer wishing to challenge the amount of assessment, the validity of the tax, or the authority of the official enforcing it." *Id.* at 944 (citing *Cobb v. Harrington*, 190 S.W.2d 709, 713 (Tex. 1945)). "Judicial review by trial de novo is clearly adequate to assure against the risk of mistaken deprivation." *Id.*; *see also Big D Bamboo, Inc. v. State*, 567 S.W.2d 915 (Tex. App.—Beaumont 1978, no writ) (holding that lack of hearing prior to filing of tax suit did not deprive appellants of any constitutional rights because "[a]ppellants were entitled to a full and complete hearing on their tax liability in the district court"). Officers and directors are entitled to a full and complete hearing on their tax liability in district court. *See* Tex. Tax Code Ann. § 111.010 (West 2008) (authorizing attorney general to file suit to recover taxes); § 112.052 (West 2008) (governing taxpayer suits after payment of taxes under protest); § 112.151 (West 2008) (governing taxpayer refund suits); *see also Herrera v. State*, No. 03-01-00101-CV, 2002 Tex. App. LEXIS 951, at *5 n.4 (Tex. App.—Austin Feb. 7, 2002, no pet.) (not designated for publication) (identifying suit under section 111.010 as "de novo action by the State to collect delinquent tax"). During these hearings, officers and directors may seek to avoid personal liability by showing that the debt was incurred over their objection or without their knowledge. *See* Tex. Tax Code Ann. § 171.255(c). Officers and directors are also statutorily on notice that the corporation's failure to fulfill franchise tax obligations may result in personal liability under section 171.255. *See Montano*, 313 S.W.3d at

19

857 ("The statute is the notice of both the requirement and the deadline."); *see also* Tex. Tax Code Ann. §§ 171.151-.214 (West 2008) (describing franchise tax filing and record-keeping obligations and deadlines). In light of the statutory notice and the opportunity for a de novo review in district court, we hold that tax code sections 171.255 and 171.256 do not violate due process.

II.      *Compliance with Section 171.256*

Even if we did consider compliance with section 171.256 to be a prerequisite for officer and director liability under 171.255, the State sufficiently established that the Comptroller fulfilled the statutory requirements in this case. At trial, the State presented the Comptroller's record of Greene's Gold's franchise tax history, which contained four separate, dated entries marked, "DELINQUENT NOTICE." Each notice entry was followed by an entry marked, "FORFEIT CORP PRIV," each of which was dated at least 45 days after the notice entry, consistent with the requirement that notices be mailed at least 45 days prior to forfeiture. *See* Tex. Tax Code Ann. § 171.256(c). These records are sufficient to fulfill the statutory requirement that the Comptroller maintain a record of the date on which a pre-forfeiture notice is mailed. *See id.* § 171.256(d).

While Greene contends that the State was also obligated to produce copies of each notice of impending forfeiture or records indicating the contents of each notice and the address to which it was sent, there is no basis in the plain language of section 171.256 for such an obligation. The only record-keeping requirement imposed on the Comptroller is to maintain "a record of the date on which the notice is mailed." *Id.* § 171.256(d). Greene points to the second sentence of subsection (d), which provides that "the notice and the record of the mailing date constitute legal and sufficient notice of the forfeiture," in support of his argument that the Comptroller must maintain a copy of the

written notice itself in addition to a record of the mailing date. *Id.* However, words and phrases in a statute must be read in context. *See* Tex. Gov't Code Ann. § 311.011(a) (West 2005). Section 171.256(d), in its entirety, states, "The comptroller shall keep at the comptroller's office a record of the date on which the notice is mailed. For the purposes of this chapter, the notice and the record of the mailing date constitute legal and sufficient notice of the forfeiture." Tex. Tax Code Ann. § 171.256(d). Under the plain language of the statute, the only record required to be kept "at the comptroller's office" is the record of the mailing date. *Id.* To require the Comptroller to maintain both a record of the mailing date and a copy of the notice itself would require us to read extra words into the statute, which we cannot do. *See Lee*, 807 S.W.2d at 295 (explaining that courts may not judicially amend statutes by adding words). Furthermore, a reading of the statute that requires the Comptroller to keep a copy of the notice, which presumably would be dated, would render the language requiring a record of the mailing date superfluous. *See Columbia Med. Ctr. v. Hogue*, 271 S.W.3d 238, 257 (Tex. 2008) ("The Court must not interpret the statute in a manner that renders any part of the statute meaningless or superfluous."). We interpret the language stating that "the notice and the record of the mailing date constitute legal and sufficient notice of the forfeiture," to indicate that by mailing the notice and maintaining a record of the date it was mailed, the Comptroller has fulfilled its obligation to provide notice.

In light of the foregoing, we hold that the State established the Comptroller's compliance with tax code section 171.256 by producing records of the mailing date of a pre-

21

forfeiture notice for each of the four periods of forfeiture for which it sought to hold Greene personally liable.[8]

We overrule Greene's first and second issues on appeal.

### CONCLUSION

We affirm the trial court's judgment.

_____

Diane M. Henson, Justice

Before Chief Justice Jones, Justices Puryear and Henson

Affirmed

Filed:   August 26, 2010

---

[8] Given our determination that the State conclusively established compliance with the notice requirement under section 171.256, we need not address the question of whether the State had the burden of proving such compliance or whether, as the State contends, Greene bore the burden of proving lack of notice as an affirmative defense. Similarly, because section 171.256 contains no requirement that the Comptroller maintain a record of the address to which the notice was sent, we need not reach Greene's argument that the trial court improperly relied on a common-law rule presuming the regularity of official acts in determining that the notice was mailed to the address listed by Greene's Gold on all documents filed with the Comptroller.