**MODIFY and AFFIRM; and Opinion Filed November 28, 2016.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-15-01207-CV

### IN THE INTEREST OF B.W.S., A CHILD

**On Appeal from the 470th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 470-51685-2010**

## MEMORANDUM OPINION
Before Justices Bridges, Lang-Miers, and Whitehill
Opinion by Justice Lang-Miers

This is an appeal from a modification order in a suit affecting the parent–child relationship. In the agreed final decree of divorce, Mother and Father were appointed joint managing conservators of their two-year-old child with Father having the exclusive right to determine the child's primary residence. A few years later, both parents moved to modify the conservatorship order, each seeking to be appointed sole managing conservator of the child. They tried the issues to the court. Following the bench trial, the court maintained the parents as joint managing conservators, but modified the final decree to eliminate Mother's possession for religious holidays and increase Mother's medical support obligation.[1] Mother requested findings of fact and conclusions of law, but the trial court did not respond.

Mother raises three issues on appeal: (1) the trial court abused its discretion by eliminating her possession for religious holidays; (2) the trial court abused its discretion by

---

[1] The court modified the final decree in other ways that are not challenged on appeal.

increasing her medical support obligation; and (3) the court's failure to make findings of fact and conclusions of law was harmful error that requires reversal and remand for a new trial. We conclude that there is no evidence to support the increase of Mother's medical support obligation and delete those provisions from the Final Order in Suit to Modify Parent–Child Relationship. We otherwise affirm the Final Order.

## STANDARD OF REVIEW

We review a trial court's decision to modify possession and child support for an abuse of discretion. *In re L.C.L.*, 396 S.W.3d 712, 716 (Tex. App.—Dallas 2013, no pet.). The legal and factual sufficiency of the evidence are factors relevant to our assessment of whether the trial court abused its discretion. *Id*. A court does not abuse its discretion as long as there is some evidence of a substantive and probative character to support the court's decision. *Id*.

## DISCUSSION

As a threshold matter, Father argues that we do not have jurisdiction to hear Mother's appeal because she filed her notice of appeal late. *See* TEX. R. APP. P. 26.1 (establishing timetable for filing notice of appeal, calculated from date final judgment is signed). He contends that Mother's notice of appeal was late because the final judgment in this case was a Memorandum expressing the court's rulings that the court sent to the parties three months before the court signed the Final Order. He argues that because Mother's notice of appeal was filed according to the date the Final Order was signed instead of the date the Memorandum was signed, it was untimely.

The Memorandum that the court sent to the parties after the bench trial was not titled a "judgment." And it instructed Father to prepare a final order reflecting the court's rulings. Father contends that the title does not matter because the Memorandum contained all the information a final judgment must contain—the case name and number, disposition of all parties and claims,

–2–

and signed and dated by the trial court. And he argues that the instruction to prepare a final order is irrelevant because "[t]he trial court's intent cannot convert a final judgment into something else." Mother contends that the Memorandum was not the final judgment because it did not contain any of the things a final order in a SAPCR is required to contain.[2] We conclude that the Memorandum was not the final judgment.

Trial courts often send letters to parties expressing their rulings on issues following a trial and instructing the prevailing party to prepare a final order or judgment reflecting those rulings. Many courts have referred to such documents as "letter rulings," presumably because the document was in the form of a letter. *See, e.g.*, *Gulf States Utils. Co. v. Low*, 79 S.W.3d 561, 563, 565 (Tex. 2002). Generally, courts have not accorded final-judgment status to letter rulings. *See, e.g.*, *id.* (post-jury trial letter ruling was interlocutory); *Goff v. Tuchscherer*, 627 S.W.2d 397, 398–99 (Tex. 1982) ("Letters to counsel are not the kind of documents that constitute a judgment, decision or order from which an appeal may be taken."); *Greene v. State*, 324 S.W.3d 276, 281–82 (Tex. App.—Austin 2010, no pet.) (letter to parties describing court's findings and asking party to prepare judgment is "insufficient to serve as an appealable order"); *Betti v. Betti*, No. 05-10-01020-CV, 2010 WL 3788056, at *1 (Tex. App.—Dallas Sep. 30, 2010, no pet.) (mem. op.) (letter ruling following trial not final judgment); *see also In re Newby*, 266 S.W.3d 557, 558–59 (Tex. App.—Amarillo 2008, no pet.) (per curiam) (letters from court to counsel generally not types of documents that constitute "judgment, decision, or order"). The Memorandum here was like a letter ruling except for its physical format.

However, even if we construed the Memorandum as a "judgment," the question is whether the court intended it to be the final judgment. Father relies on *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191 (Tex. 2001), to support his argument that the Memorandum was the final

---

[2] Section 105.006 lists numerous requirements of a final order. TEX. FAM. CODE ANN. § 105.006 (West Supp. 2016).

judgment because it disposed of all parties and claims. He argues that the trial court's intent does not matter. But *Lehmann* did not involve a letter ruling or memorandum to the parties expressing the court's rulings on the issues. *See id.* at 194. Instead, the issue was the finality of summary-judgment orders. *Id.* at 195–208. Following a conventional trial on the merits, as here, the court's intent matters if there is a dispute about whether the judgment is final. *See Vaughan v. Drennon*, 324 S.W.3d 560, 561, 563 (Tex. 2010) (per curiam). The parties disagree about whether the Memorandum was intended to be the final judgment, and there are reasons to support each view. Accordingly, we must determine the trial court's intent as "'gathered from the language of the decree and the record as a whole, aided on occasion by the conduct of the parties.'" *Id.* at 563 (quoting *Lehmann*, 39 S.W.3d at 203).

When a document such as the Memorandum here instructs the parties to prepare an appropriate final order, this is evidence that the trial court did not intend the document to be a final judgment. *Goff*, 627 S.W.2d at 398–99. This is supported further by the fact the trial court signed the Final Order in this case three months later. Additionally, the parties did not treat the Memorandum as a final judgment below. Mother did not file post-judgment motions after the court sent the Memorandum; she filed them after the trial court signed the Final Order. And even though Father argues on appeal that the Memorandum was the final judgment, he did not argue that below, and he also filed a motion asking the court to sign a final order.[3]

Having reviewed the record and relevant authorities, we conclude that the Memorandum was not intended to be and was not the final judgment. Accordingly, Mother's notice of appeal was timely and we have jurisdiction to hear this appeal.

---

[3] This motion is not part of our appellate record, but it is listed on the court's docket sheet.

**Issue One: Modification of Possession for Religious Holidays**

In issue one, Mother contends that the evidence is insufficient to show a material and substantial change in circumstances to justify the modification of her possession for religious holidays. Mother argues that the trial court's decision was arbitrary and unreasonable because she and Father also had conflicts with regard to the Thanksgiving holiday, but the trial court did not eliminate those periods of possession. She also argues that there is no evidence the modification was in the child's best interest and, in fact, all the evidence was to the contrary. We disagree.

The Texas Family Code authorizes a trial court to modify possession and access if the modification is in the child's best interest and the circumstances of the child, a conservator, or other party affected by the existing order have materially and substantially changed since the initial order was rendered. TEX. FAM. CODE ANN. § 156.101(a)(1) (West 2014); *In re L.C.L.*, 396 S.W.3d at 718. A trial court has broad discretion in matters of custody and possession. *In re S.E.K.*, 294 S.W.3d 926, 929 (Tex. App.—Dallas 2009, pet. denied). Because the court is in the best position to observe the witnesses and their demeanor, the court is given great latitude when determining the best interests of a child. *Id*. at 930.

In the final decree, Mother and Father agreed that Mother would have possession of the child for the religious holidays of Rosh Hashanah, Yom Kippur, Passover, and Hanukkah. According to the final decree, the possession generally began "at the time school is regularly dismissed (or 3:00 p.m. if school is not in session) on the day [the holiday] begins and ending at the time school resumes (or 8:00 a.m. if school is not in session) the following day."

Mother testified at trial that religious holidays traditionally begin at sundown the day before the holiday and end at sundown the next day. She testified that she wanted to exercise her periods of possession accordingly, but Father refused because he "thinks that the decree is

wrong." She testified that Father is also Jewish and knows when religious holidays begin according to Jewish tradition, but he would never allow her to exercise her possession according to the tradition. She said every time there was a religious holiday, "[t]here's always a conflict with our schedule to when I'm supposed to pick up [the child]. And it – it's just tiring. It makes it very complicated and difficult for him and us."

Mother also testified about a possession dispute for the Thanksgiving holiday, but the evidence showed she and Father reached an agreement about that holiday after consulting with their attorneys. The evidence does not show that Mother and Father were ever able to reach an agreement about her possession for religious holidays.

Other evidence showed that Mother and Father successfully co-parented the child for the first year following the divorce, but they had become unable to co-parent as the child grew older and became more involved in social activities. Mother testified that the circumstances with Father had "progressively got worse and worse" and "[a]t this point there's no communication" and "no cooperation." She said Father would not cooperate with her to allow the child to attend important events in her family, such as birthday parties and weddings, and he refused to take the child to the extracurricular activities in which she had enrolled the child when he exercised his possession. However, Mother also agreed with the statement that when Father had tried to communicate with her, she had complained that he was harassing her.

A parent facilitator who was appointed by the trial court to assist the parents in their co-parenting efforts after the divorce reported "that most of their conflict occurred during transitions of the child." And a social work expert, appointed by the court during the modification proceedings to interview and observe the family and report to the court, testified that he was concerned about whether Mother and Father have the ability "to move forward and adequately address the needs of the child" because of their continual and ongoing "pattern of . . .

confrontational power struggles." He believed that it was in the best interest of the child to remove any areas in which the parents had to "seek consensus" to "hopefully diminish their ability to remain in conflict," which, in his opinion, was "doing the most harm." Although neither the parent facilitator nor the social work expert testified specifically about conflicts over possession for religious holidays, they did agree that areas of conflict should be eliminated to the extent possible. And Mother even testified that the current possession schedule was unworkable and not in the child's best interest.

By eliminating Mother's possession for religious holidays, the trial court also eliminated an area in which the parents had to "seek consensus" concerning possession and access to the child. While it may have been possible to render a detailed order about the exchange of possession for these holidays so that nothing was left to the parties' respective interpretations, the trial court heard all the evidence, observed the demeanor of the parties, and was in the best position to make the decision concerning possession. And there is evidence to support that decision. Consequently, we cannot conclude that the trial court abused its discretion by eliminating Mother's possession for religious holidays. We resolve issue one against Mother.

### Issue Two: Order to Pay Medical Support

In issue two, Mother argues that the trial court abused its discretion by increasing her medical support obligation.

The final decree required Father to furnish health insurance for the child. It did not require Mother to pay additional medical support for the child as child support. *See* TEX. FAM. CODE ANN. § 154.181(a) (court "shall render an order of medical support of child" when ordering periodic payments of child support). The trial court modified the final decree by ordering Mother to pay $170 per month in cash medical support as additional child support. Mother contends that the evidence is insufficient to support the modification because there was

no evidence of a material and substantial change in circumstances and no evidence to support the amount. We agree.

In his opening statement at trial, Father's attorney told the trial court that Father would be seeking medical support from Mother in the amount of "approximately $100" for the cost of insurance for the child. But Father did not offer evidence to support the $100 amount or the $170 amount in the Final Order. Indeed, Father did not offer any evidence of the cost of insurance for the child. And there was no evidence of the circumstances or cost of insurance at the time of the initial order to allow the court to compare the present circumstances. *See In re C.C.J.*, 244 S.W.3d 911, 917–18 (Tex. App.—Dallas 2008, no pet.) (record must contain historical and current evidence or court has nothing to compare to determine whether a material and substantial change has occurred). Consequently, the trial court abused its discretion by modifying the final decree to order Mother to pay $170 per month in cash medical support as additional child support. We resolve issue two in Mother's favor and delete the following provisions of the Final Order:

▪ On page 20:

2. Findings on Health Insurance Availability - Having considered the cost, accessibility, and quality of health insurance coverage available to the parties, the Court finds:

Health insurance is available to [Father] at a reasonable cost of $170.00 from *another source.*

▪ On page 21:

[Mother] is ORDERED to pay to [Father] cash medical support, as additional child support, of one hundred seventy dollars ($170.00) per month, with the first installment being due and payable on May l, 2015 and a like installment being due and payable on or before the first day of each month until the termination or modification of current child support for the child under this Order.

Obligor is Ordered to send all cash medical support payments to the Texas Child Support Disbursement Unit, P.O. Box 659791, San Antonio, TX 78265 for distribution according to law.

The Court Orders that money paid by Obligor directly to Obligee or spent while in possession of the child does not count as medical support.

IT IS ORDERED that the cash medical support provisions of this Order shall be an obligation of the estate of [Mother] and shall not terminate on her death.

### Issue Three: Failure to Make Findings of Fact and Conclusions of Law

In issue three, Mother argues that we must reverse the Final Order and remand this case for a new trial because the trial court failed to make findings of fact and conclusions of law after a proper request and proper notice of past-due findings and conclusions.

Mother filed a request for findings and conclusions and a notice of past-due findings and conclusions pursuant to the Texas Rules of Civil Procedure. Mother states that the usual procedure when a trial court fails to make findings and conclusions after a proper request is to abate the appeal and remand to the trial court to make findings and conclusions. However, Mother argues that the usual procedure cannot apply here because the case has since been transferred to a newly established court that did not hear the trial. Mother argues that the "error is no longer curable" and the only remedy is to reverse and remand for a new trial in the new court. Father argues that Mother was not entitled to findings and conclusions because her requests were untimely under the Family Code.

For purposes of our analysis, we assume but do not decide that the trial court was required to make findings and conclusions in this case. When a trial court does not make findings and conclusions in a case in which it is required to do so, it is presumed to be harmful error unless the record on appeal affirmatively shows that the complaining party did not suffer harm. *In re J.D.H.*, No. 05-14-00504-CV, 2016 WL 3946822, at *4 (Tex. App.—Dallas July 18, 2016, no pet.) (mem. op.). On appeal, the test for harm is whether the appellant must guess at the reason the trial court ruled against her. *Id*. But when there is evidence in the appellate record to

–9–

support the trial court's decision, the failure to make findings and conclusions is considered harmless error. *Tenery v. Tenery*, 932 S.W.2d 29, 30 (Tex. 1996) (per curiam).

The trial court modified several provisions of the final decree, but Mother does not address any of these specific modifications in her opening brief, and she does not argue how the court's failure to make findings and conclusions affected her ability to raise arguments on appeal about any of these specific modifications. *See id.* Instead, she argues only that the error must be remedied by a new trial.

In response to Father's argument that the record affirmatively shows Mother was not harmed by the court's failure to make findings and conclusions, Mother argues for the first time in her reply brief that findings of fact would have shown why the trial court made the decision to eliminate her possession for religious holidays while leaving the possession schedule for the Thanksgiving holiday intact. But as we previously concluded, the evidence supports this decision by the trial court and, as a result, the record affirmatively shows Mother was not harmed by the trial court's failure to make findings and conclusions on this specific issue. *See id.* (no harm when record supports court's decision).

Additionally, a trial court is required to make findings only on ultimate or controlling issues; it is not required to make findings on evidentiary issues or findings "aimed at tying down the court's reasoning rather than its conclusions." *In re S.E.K.*, 294 S.W.3d at 929; *see also Moore v. Moore*, 383 S.W.3d 190, 195 n.1 (Tex. App.—Dallas 2012, pet. denied) (trial court not required to make findings about *why* it decided an ultimate or controlling issue). The ultimate or controlling issues in a modification proceeding are the best interest of the child and whether the circumstances have materially and substantially changed. *See* TEX. FAM. CODE ANN. § 156.101; *In re S.E.K.*, 294 S.W.3d at 929.

With regard to the trial court's decisions on the ultimate issues, the evidence showed that Mother and Father successfully co-parented the child for the first year, but as the child grew older and became more involved in social activities, the parents could no longer co-parent. Several reasons were given for this: refusal to cooperate, failure to communicate, disputes about the possession schedule, disputes about the parent facilitator, disputes about expenses. The reports of the parent facilitator and the social work expert supported the trial court's decisions on the controlling issues. And as we stated before, Mother testified about how the circumstances had changed since the child was older and more mature, and she even testified that the current possession schedule was not workable and was not in the child's best interest. Accordingly, we conclude that the record affirmatively shows Mother was not harmed by the trial court's failure to make findings of fact and conclusions of law. We resolve issue three against Mother.

## CONCLUSION

We modify the Final Order in Suit to Modify Parent–Child Relationship to delete the provisions regarding cash medical support as additional child support and affirm as modified.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

151207F.P05

–11–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF B.W.S., A CHILD,

No. 05-15-01207-CV

On Appeal from the 470th Judicial District Court, Collin County, Texas
Trial Court Cause No. 470-51685-2010.
Opinion delivered by Justice Lang-Miers.
Justices Bridges and Whitehill participating.

In accordance with this Court's opinion of this date, the Final Order in Suit to Modify Parent–Child Relationship is **MODIFIED** to delete the following provisions.

▪ On page 20:

2. Findings on Health Insurance Availability - Having considered the cost, accessibility, and quality of health insurance coverage available to the parties, the Court finds:

Health insurance is available to [Father] at a reasonable cost of $170.00 from *another source.*

▪ On page 21:

[Mother] is ORDERED to pay to [Father] cash medical support, as additional child support, of one hundred seventy dollars ($170.00) per month, with the first installment being due and payable on May l, 2015 and a like installment being due and payable on or before the first day of each month until the termination or modification of current child support for the child under this Order.

Obligor is Ordered to send all cash medical support payments to the Texas Child Support Disbursement Unit, P.O. Box 659791, San Antonio, TX 78265 for distribution according to law.

The Court Orders that money paid by Obligor directly to Obligee or spent while in possession of the child does not count as medical support.

IT IS ORDERED that the cash medical support provisions of this Order shall be an obligation of the estate of [Mother] and shall not terminate on her death.

It is **ORDERED** that, as modified, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 28th day of November, 2018.