**VIRTUAL HEALTHCARE SERVICES, LTD., Appellant,**

v.

**Glenn LABORDE, Appellee.**

No. 11–05–00007–CV.

Court of Appeals of Texas, Eastland.

March 23, 2006.

 

 

 

 

 

 

 

 

 

 

 

 

 

Charles Dick Harris, Law Office of Dick Harris, Abilene, for appellant.

D. Grant Seabolt, Jr., Simpson Woolley McConahie, L.L.P., Dallas, for appellee.

Panel consists of: WRIGHT, C.J., and McCALL, J., and STRANGE, J.

## OPINION

TERRY McCALL, Justice.

In a single appellate issue, Virtual Healthcare Services, Ltd. challenges the trial court's order granting the special appearance of Glenn Laborde, a Louisiana resident, and the trial court's take-nothing judgment in favor of Laborde. Virtual Healthcare sought to hold Laborde personally liable for a corporate debt under TEX. TAX CODE ANN. § 171.255(a) (Vernon 2002). The issue in this appeal is whether Section 171.255(a) conferred specific personal jurisdiction over Laborde in Texas. Based on the undisputed facts, we find that Section 171.255(a) did not confer personal jurisdiction over Laborde in Texas.

Therefore, we affirm the judgment of the trial court.

### Background Facts

Laborde was the sole shareholder, the sole director, and the president of Cross Timbers Care Center, Inc., a Louisiana corporation. Cross Timbers had a certificate of authority to transact business in Texas, and it operated a nursing home in Flower Mound, Texas. On February 23, 2000, the Texas Comptroller of Public Accounts forfeited Cross Timbers's corporate privileges in Texas for its failure to comply with franchise tax requirements.

Between April 15, 2000, and July 15, 2000, Virtual Healthcare provided nurse staffing services to Cross Timbers at its nursing home in Texas. When Cross Timbers failed to pay for the services, Virtual Healthcare filed this cause against Cross Timbers and its management company, Tutera Health Care Services, L.L.C., seeking to recover the amount owed for the staffing services. Cross Timbers did not file an answer to the suit, and the trial court entered an interlocutory default judgment against Cross Timbers for $78,987.69, plus attorney's fees, costs of court, prejudgment interest, and post-judgment interest. Tutera answered the suit.

In an amended petition, Virtual Healthcare added Laborde as a defendant, seeking to hold him personally liable for Cross Timbers's debt under Section 171.255(a) of the Tax Code. Section 171.255(a) provides in part as follows:

> If the corporate privileges of a corporation are forfeited for the failure to file a report or pay a tax or penalty, each director or officer of the corporation is liable for each debt of the corporation that is created or incurred in this state after the date on which the report, tax, or penalty is due and before the corporate privileges are revived.

Virtual Healthcare alleged that Laborde was personally liable for Cross Timbers's debt because (1) Laborde was a director and officer of Cross Timbers and (2) the debt was incurred after Cross Timbers's corporate privileges were forfeited.

Laborde filed his special appearance contesting personal jurisdiction. Virtual Healthcare argued that Section 171.255(a) of the Tax Code conferred personal jurisdiction over Laborde. The trial court granted Laborde's special appearance motion, dismissed Virtual Healthcare's claims against him for lack of jurisdiction, and entered a take-nothing judgment in favor of Laborde. Virtual Healthcare nonsuited its claims against Tutera, and the trial court entered a take-nothing judgment in favor of Tutera.

### Issue on Appeal

Virtual Healthcare contends that, under Section 171.255(a), when a corporation forfeits its right to do business in Texas but nevertheless continues to do business in Texas, the corporation's acts are attributable to its directors and officers. Therefore, Virtual Healthcare asserts that the directors and officers are personally doing business in Texas and that Section 171.255(a), by implication, confers specific personal jurisdiction over the directors and officers.

### Special Appearance Facts

The special appearance facts are undisputed. On July 30, 1998, Cross Timbers, a Louisiana corporation, filed an application for certificate of authority to transact business in Texas with the Texas Secretary of State's office. Laborde was the sole shareholder, the sole director, and the president of Cross Timbers. In its application, Cross Timbers provided the ad-

dress for its principal office in Louisiana as 200 West University Drive, Hammond, Louisiana 70401. Cross Timbers stated that the address of its proposed registered office in Texas was 350 N. St. Paul Street, Suite 2900, Dallas, Texas 75201, and that its proposed registered agent in Texas was C T Corporation System. Although the record does not contain a copy of the certificate, the record indicates that the secretary of state issued a certificate permitting Cross Timbers to transact business in Texas. Cross Timbers operated a nursing home in Flower Mound, Texas.

On October 28, 1999, the Texas Comptroller of Public Accounts issued a notice stating that Cross Timbers's franchise tax account was delinquent. On January 7, 2000, the comptroller mailed the notice to Cross Timbers at the following address: "Cross Timbers Care Center, Inc., 7611 State Line Rd., Ste. 301 c/o Tutera Group, Kansas City, MO 64114–1698." The record shows that Tutera was providing management services to Cross Timbers under a management contract. The notice stated that Cross Timbers's corporate privileges in Texas would be forfeited unless Cross Timbers complied with franchise tax requirements on or before February 22, 2000.

On February 23, 2000, the comptroller issued a notice informing Cross Timbers that its corporate privileges had been forfeited as of that date for failure to satisfy franchise tax requirements. On March 3, 2000, the comptroller mailed the notice to Cross Timbers, again sending it to Tutera's address. On August 25, 2000, the secretary of state forfeited Cross Timbers's certificate of authority to transact business in Texas. Laborde stated in his affidavit that he and Cross Timbers did not have actual notice of the forfeiture until January 2001, when the Texas Department of Health informed Cross Tim-

bers that its nursing home license was in jeopardy due to the forfeiture of its corporate privileges. Thereafter, on January 24, 2001, the secretary of state reinstated Cross Timbers's certificate of authority to transact business in Texas.

Laborde also detailed his lack of contacts with Texas in his affidavit. He stated the following: (1) that he had not regularly engaged in any business or transacted any business in Texas in his individual capacity; (2) that he had never appointed an agent for service of process in Texas in his individual capacity; (3) that he had never obtained a certificate of authority to do business in Texas in his individual capacity; (4) that he had never owned or leased any property in Texas in his individual capacity; (5) that he had never had an address or a telephone number in Texas in his individual capacity; (6) that he had never maintained any bank accounts in Texas in his individual capacity; and (7) that he had never advertised for business or for any other purpose in Texas in his individual capacity.

Laborde also stated that he had traveled to Texas on some occasions during the last five years. He said that his travels to Texas had only been (1) in his capacity as an officer of corporations that were general partners in limited partnerships doing business in Texas and in his capacity as an officer of Cross Timbers (4–6 trips); (2) for the purpose of visiting his daughter in Texas (2–3 trips); and (3) for the purpose of traveling through Texas to get to Missouri for business trips (2–3 trips). He said that his travels to Texas had not been for any personal business interests.

Laborde explained that he had no individual dealings with Virtual Healthcare. He said that the contacts with respect to the staffing services in question were between Tutera (Cross Timbers's manage-

ment company) and Virtual Healthcare. Laborde said that his dealings with Tutera were in his capacity as president of Cross Timbers. Virtual Healthcare's president, Scott Lee Taliaferro Jr., testified at the hearing on Laborde's special appearance motion. He said that no negotiations took place between Virtual Healthcare and "someone in Louisiana" and that he had not had any personal dealings with Laborde.

### Standard of Review

The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the Texas long-arm statute. Tex. Civ. Prac. & Rem.Code Ann. §§ 17.041–.045 (Vernon 1997 & Supp.2005); *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 793 (Tex.2002). When the plaintiff meets this burden, the burden shifts to the nonresident defendant to negate all possible grounds for personal jurisdiction. *BMC Software,* 83 S.W.3d at 793; *Kawasaki Steel Corp. v. Middleton,* 699 S.W.2d 199, 203 (Tex.1985). The existence of personal jurisdiction is a question of law which must sometimes be preceded by the resolution of underlying factual disputes. *Preussag Aktiengesellschaft v. Coleman,* 16 S.W.3d 110, 113 (Tex.App.-Houston [1st Dist.] 2000, pet. dism'd w.o.j.). In considering an order granting or denying a special appearance, we may review a trial court's findings on disputed factual issues for both legal and factual sufficiency. *BMC Software,* 83 S.W.3d at 794. However, when the underlying facts are undisputed or otherwise established, we conduct a de novo review of the trial court's order as a question of law. *BMC Software,* 83 S.W.3d at 794; *El Puerto de Liverpool, S.A. de C.V. v. Servi Mundo Llantero S.A. de C.V.,* 82 S.W.3d 622, 628 (Tex.App.-Corpus Christi 2002, pet. dism'd w.o.j.); *Goodenbour v. Goodenbour,* 64 S.W.3d 69, 75 (Tex.App.-Austin 2001, pet. denied); *Preussag Aktiengesellschaft,* 16 S.W.3d at 113. In any event, in conducting its review, an appellate court considers all of the evidence in the record. *El Puerto de Liverpool, S.A. de C.V.,* 82 S.W.3d at 628.

### Personal Jurisdiction

A Texas court may assert personal jurisdiction over a nonresident defendant only if the requirements of both the Due Process Clause of the Fourteenth Amendment to the United States Constitution and the Texas long-arm statute are satisfied. *CSR Ltd. v. Link,* 925 S.W.2d 591, 594 (Tex.1996). The Texas long-arm statute permits Texas courts to exercise jurisdiction over a nonresident defendant that does business in Texas. Section 17.042; *BMC Software,* 83 S.W.3d at 795. The Texas long-arm statute reaches "as far as the federal constitutional requirements of due process will allow." *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 226 (Tex.1991). We rely on precedent from the United States Supreme Court and other federal courts, as well as our own state's decisions, in determining whether a nonresident defendant has met its burden to negate all bases of jurisdiction. *BMC Software,* 83 S.W.3d at 795.

Personal jurisdiction over nonresident defendants is constitutional when two conditions are met: (1) the defendant has established minimum contacts with the forum state, and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *BMC Software,* 83 S.W.3d at 795 (citing *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). The minimum contacts analysis requires that a defendant "purposely avail" itself of the

privilege of conducting activities within Texas, thus invoking the benefits and protections of our laws. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). The "touchstone" of due process analysis is "purposeful availment." *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex.2005). The defendant's activities, whether they consist of direct acts within Texas or conduct outside Texas, must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court. *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex.2002)(citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). Jurisdiction is premised on notions of implied consent that, by invoking the benefits and protections of a forum's laws, a nonresident consents to suit there. *Michiana Easy Livin' Country, Inc.*, 168 S.W.3d at 785. A defendant is not subject to jurisdiction in Texas if its Texas contacts are random, fortuitous, or attenuated. *Id.* Nor can a defendant be haled into a Texas court based on the unilateral acts of a third party. *Id.* The quality and nature of the defendant's contacts with the forum state, rather than their number, are important in analyzing minimum contacts. *Guardian Royal*, 815 S.W.2d at 230 n. 11.

■■■■■ A defendant's contacts with a forum state can give rise to either general or specific jurisdiction. *Guardian Royal*, 815 S.W.2d at 227–28. General jurisdiction is present when a defendant's contacts are continuous and systematic, permitting the forum to exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to the activities conducted within the forum. *CSR Ltd.*, 925 S.W.2d at 595. General jurisdiction requires a showing that the defendant conducted substantial activities within the forum, a more demanding minimum contacts analysis than for specific jurisdiction. *Id.* Specific jurisdiction is present when the cause of action arises from or is related to the defendant's contact with the forum state. *Id.; Guardian Royal*, 815 S.W.2d at 227. When specific jurisdiction is asserted, the minimum contacts analysis focuses on the relationship among the defendant, the forum, and the litigation. *Guardian Royal*, 815 S.W.2d at 228. The exercise of personal jurisdiction is proper when the contacts proximately result from actions of the defendant that create a substantial connection with the forum state. *Id.* at 226. The substantial connection between the defendant and the forum must have resulted from the defendant's purposeful conduct directed to the forum and not from the unilateral activity of the plaintiff or others. *Id.* at 226–27.

■■■■ Virtual Healthcare alleged that Laborde was personally doing business in Texas during the time that Cross Timbers's corporate privileges were forfeited. Because Virtual Healthcare met its burden of pleading jurisdictional facts, Laborde then had the burden to negate all possible grounds for personal jurisdiction. *BMC Software*, 83 S.W.3d at 793; *Kawasaki Steel Corp.*, 699 S.W.2d at 203. Laborde's affidavit established that he did not have the type of continuous and systematic contact with Texas that is required for general jurisdiction. Therefore, Laborde satisfied his burden of negating general jurisdiction. Additionally, Virtual Healthcare does not argue that Laborde is subject to general jurisdiction in Texas. Rather, Virtual Healthcare argues that Section 171.255(a) conferred specific jurisdiction over Laborde.

### Specific Jurisdiction and Section 171.255(a)

The sole issue on appeal is the specific jurisdictional issue. Therefore, we limit

our analysis of Section 171.255(a) to the jurisdictional issue, and we do not address the merits of Virtual Healthcare's claim that Laborde is personally liable for Cross Timbers's debt.

As stated, personal jurisdiction over nonresident defendants is constitutional when two conditions are met: (1) the defendant has established minimum contacts with the forum state, and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *BMC Software*, 83 S.W.3d at 795 (citing *Int'l Shoe*, 326 U.S. at 316, 66 S.Ct. 154). Neither requirement was satisfied in this case.

*Minimum Contacts*

The minimum contacts analysis requires a finding that Laborde "purposefully availed" himself of the privilege of conducting activities within Texas and, thus, invoked the benefits and protections of our laws. *Burger King*, 471 U.S. at 475, 105 S.Ct. 2174. "Purposeful availment" is the predicate to justify a conclusion that Laborde could have reasonably anticipated being called into a Texas court. *World–Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. 559; *Am. Type Culture Collection*, 83 S.W.3d at 806.

Section 171.255(a) provides notice to directors and officers of corporations, such as Laborde, that they are personally liable for the debts covered by the statute. All persons are presumed to know the law and are charged with knowledge of provisions of statutes. *N. Laramie Land Co. v. Hoffman*, 268 U.S. 276, 283, 45 S.Ct. 491, 69 L.Ed. 953 (1925); *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 n. 3 (Tex.1990). But notice that they may be liable for corporate debts does not justify a conclusion that nonresident officers and directors could reasonably anticipate being called into a Texas court. Cross Timbers "purposefully availed" itself of the benefits and protections of the laws of Texas; the same cannot be said of Laborde under the undisputed facts.

Tutera, as Cross Timbers's management company, dealt with Virtual Healthcare for the staffing services. Laborde had no dealings with Virtual Healthcare. For a court to exercise specific jurisdiction over a nonresident defendant, the defendant's contacts with the forum must be purposeful, and the cause of action must have arisen from or be related to those contacts. *Guardian Royal*, 815 S.W.2d at 227–28. Laborde did not "purposefully avail" himself of the benefits and protections of our laws. His contacts with Texas did not purposefully relate to Cross Timbers's dealings with Virtual Healthcare, and Virtual Healthcare's cause of action did not arise from any of Laborde's contacts with Texas. The minimum contacts requirement was not met.

*Fair Play and Substantial Justice*

The second requirement—that the exercise of jurisdiction over Laborde comport with traditional notions of fair play and substantial justice—also was not satisfied. Again, the undisputed facts are relevant.

Section 171.255(a) is penal in nature, and its provisions must be strictly construed. *Williams v. Adams*, 74 S.W.3d 437 (Tex. App.-Corpus Christi 2002, pet'n denied); *Davis v. State*, 846 S.W.2d 564 (Tex.App.-Austin 1993, no writ). Because it is penal in nature, procedural safeguards must be observed.

The special appearance evidence established that the comptroller did not follow the statutes in forfeiting Cross Timbers's corporate privileges in Texas. When the comptroller proposes to forfeit the corporate privileges of a corporation for failing to comply with franchise tax requirements,

the comptroller must mail notice of the proposed forfeiture to the corporation. TEX. TAX CODE ANN. §§ 171.251, 171.256 (Vernon 2002). Section 171.256(c) provides as follows:

> The comptroller shall mail notice to the corporation at least 45 days before the forfeiture of corporate privileges. The notice shall be addressed to the corporation and mailed to the address named in the corporation's charter as its principal place of business or to another known place of business of the corporation.

Section 171.251 provides that the comptroller shall forfeit the corporate privileges if the corporation does not comply with outstanding franchise tax requirements within forty-five days after the mailing of the notice of forfeiture.

In this case, Section 171.256(c) required the comptroller to mail the notice of forfeiture to "the address named in [Cross Timbers's] charter as its principal place of business or to another known place of business of the corporation." In its application for certificate of authority to transact business in Texas, Cross Timbers provided the address of its principal office in Louisiana and the address of its proposed registered office in Texas. The comptroller did not mail the notice of proposed forfeiture to either of these addresses. Instead, the comptroller sent the notice to Cross Timbers's management company, Tutera, in Kansas City. The mailed notice did not comply with statutory notice requirements.

Laborde presented evidence establishing that he and Cross Timbers did not know of the forfeiture of Cross Timbers's corporate privileges until January 2001, when the Texas Department of Health informed Cross Timbers that its nursing home license was in jeopardy due to the forfeiture. Cross Timbers incurred its debt to Virtual Healthcare before Cross Timbers or Laborde had knowledge of the forfeiture. Because Laborde did not have knowledge of the forfeiture when Cross Timbers incurred the debt—either by proper statutory notice from the comptroller to Cross Timbers or other notice—we find that an exercise of jurisdiction over Laborde would not comport with traditional notions of fair play and substantial justice. Laborde satisfied his burden to negate specific jurisdiction.

The trial court did not err in granting Laborde's special appearance motion. Virtual Healthcare's sole appellate issue is overruled.

### This Court's Ruling

We affirm the judgment of the trial court.