# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

NO. 03-24-00569-CV

---

**Gregory Schain, Appellant**

**v.**

**JR Land Investments, LLC, Appellee**

---

**FROM THE 424TH DISTRICT COURT OF BLANCO COUNTY
NO. CV09344, THE HONORABLE EVAN C. STUBBS, JUDGE PRESIDING**

---

## MEMORANDUM OPINION

This is a special-appearance interlocutory appeal by a New Hampshire resident. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(7). The New Hampshirite, Gregory Schain, is one of the members and co-managers of an entity called New Mill Capital Holdings, LLC, which was organized under the laws of a state other than Texas. New Mill agreed to buy a 45-acre Blanco County tract from JR Land Investments, LLC.[1] After the sale failed to close, JR Land sued New Mill; Schain; and another New Mill member, Tim Watters. Schain filed a special appearance, contending that the trial court lacked specific personal jurisdiction over him, but the court denied him relief. Because the purported contacts that JR Land alleges between Schain and Texas are New Mill's contacts (or JR Land's), are not related to this suit, or fall short of the requisite

---

[1] No statement in this opinion should be construed as a comment on the merits of any of the affirmative claims or the defenses or affirmative defenses in the underlying suit. For purposes of this appeal, both sides have assumed the validity of the contract of sale, so we do the same.

purposeful availment of the privilege of conducting activities in Texas, we reverse the trial court's denial of Schain's special appearance and render judgment dismissing him from the suit.

# I

JR Land's suit is for breach of a Farm and Ranch Contract concerning the 45-acre tract identified by the address 3625 RR 3347, Round Mountain, Texas (the Agreement). In its live petition, JR Land alleges that New Mill is a Delaware LLC whose members include Watters and Schain. The defendants contest whether the New Mill Delaware entity entered into the Agreement, arguing instead that the contracting party was an LLC with the same name but organized under Nevada law.[2] Even so, for purposes of his special appearance and this appeal, Schain says that he assumes that JR Land is correct that it was the Delaware entity that entered into the Agreement.

Elsewhere in its live petition, JR Land alleges that the three defendants "are an individual and a corporation doing business in Texas." JR Land also alleges that although it performed everything required of it under the Agreement, New Mill failed to perform. JR Land seeks as relief for the breach either specific performance or damages (plus attorneys' fees). It further alleges that because New Mill's right to transact business in Texas was forfeited, Watters, who signed the Agreement for New Mill, and Schain, who "was actively involved in the negotiation of" the Agreement, "are personally liable for the debts on New Mill." JR Land has not, however, alleged that Schain committed any tortious or fraudulent conduct in Texas.

---

[2] JR Land in its suit pleads an alternative claim against the New Mill Nevada entity.

Schain filed a special appearance to contest the trial court's personal jurisdiction over him.  JR Land responded to the special appearance, and the court held an in-person hearing.[3] After the court denied Schain relief, he perfected this appeal.

**II**

Schain contends that the trial court erred by concluding that it has specific personal jurisdiction over him and thus by failing to grant him relief on his special appearance.  We first set forth applicable law of (A) personal jurisdiction, (B) challenges to personal jurisdiction by special appearance, and (C) the kind of "minimum contacts" that are required to show personal jurisdiction here.  Then we assess each of the allegations that JR Land relies on to support personal jurisdiction.

*A*

A court must have personal jurisdiction over a defendant to issue a binding judgment.  *LG Chem Am., Inc. v. Morgan*, 670 S.W.3d 341, 346 (Tex. 2023).  Texas courts may exercise personal jurisdiction over a nonresident defendant if the exercise is authorized by the long-arm statute and consistent with federal due-process guarantees.  *Id.*  Because the long-arm statute reaches as far as federal constitutional requirements allow, the "federal due process

---

[3] JR Land's response added allegations of Schain's contacts with Texas that its live petition did not itself include.  We review the allegations added by the special-appearance response and that JR Land relies on as ones just as operative as are the ones in JR Land's live petition.  We do so because of precedent from this Court stretching back at least to *Ennis v. Loiseau*, 164 S.W.3d 698 (Tex. App.—Austin 2005, no pet.).  We recognize, however, that this approach has come in for criticism by some of our sister courts.  *See, e.g.*, *Steward Health Care Sys. LLC v. Saidara*, 633 S.W.3d 120, 126–29 & n.9 (Tex. App.—Dallas 2021, no pet.) (en banc) (citing *Kelly v. General Interior Constr., Inc.*, 301 S.W.3d 653, 658–59 (Tex. 2010)); *State v. Yelp, Inc.*, 725 S.W.3d 170, 177–79 & n.2 (Tex. App.—15th Dist. 2025, pet. filed) (similarly citing *Kelly*).  Here, we need not decide whether the *Ennis* approach survives *Kelly* because even if we consider allegations that JR Land added in its special-appearance response, JR Land still does not prevail.

requirements shape the contours of Texas courts' jurisdictional reach." *Goldstein v. Sabatino*, 690 S.W.3d 287, 294 (Tex. 2024) (quoting *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 66 (Tex. 2016)).

## B

Nonresident defendants may challenge personal jurisdiction by filing a special appearance. *LG Chem Am.*, 670 S.W.3d at 346; *see* Tex. R. Civ. P. 120a. The procedure involves shifting burdens. *Kelly v. General Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). Initially, plaintiffs as a part of their suit must plead sufficient allegations to bring the nonresident defendant within the reach of the long-arm statute. *See LG Chem Am.*, 670 S.W.3d at 346. Then defendants, via their special appearance, bear the burden to negate all bases of personal jurisdiction alleged by the plaintiff. *See id.* Defendants can negate personal jurisdiction on either a factual or a legal basis. *Id.* They can present evidence that contradicts the plaintiff's factual allegations supporting personal jurisdiction, and plaintiffs can then respond with their own evidence supporting their allegations. *Id.* Or defendants can show that even if the plaintiff's alleged facts are true, the conduct alleged is legally insufficient to support personal jurisdiction. *See TV Azteca, S.A.B. de C.V. v. Ruiz*, 490 S.W.3d 29, 36 n.4 (Tex. 2016); *Dukatt v. Dukatt*, 355 S.W.3d 231, 238 (Tex. App.—Dallas 2011, pet. denied). Although questions of fact sometimes arise in the analysis, it is a question of law whether a court has personal jurisdiction over a party, and we review the trial court's answer to that question *de novo. See LG Chem Am.*, 670 S.W.3d at 346.

## C

Texas courts' exercise of personal jurisdiction over nonresident defendants is, as noted, constrained by the federal constitutional right to due process. *Id.* That exercise depends on

the defendant's having sufficient "minimum contacts" with Texas so that maintaining the suit is reasonable and "does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316–17 (1945)). The focus is on "the nature and extent of 'the defendant's relationship to the forum State.'" *Id.* (quoting *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021)).

Personal jurisdiction comes in two forms: "general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." *Id.* at 347 (quoting *Ford Motor*, 592 U.S. at 358). JR Land concedes that it cannot establish general jurisdiction over Schain in Texas courts, so the only issue in this appeal is whether it has established specific personal jurisdiction over him. To establish specific personal jurisdiction over Schain in Texas, JR Land must demonstrate that he has a certain sufficient level of minimum contacts with Texas. *See id.*

*1*

The alleged contacts must be viewed through the lens of his and New Mill's separate legal existence. This legal separateness can affect liability rules: A bedrock principle of law is that an individual can form a business entity like an LLC and thereby normally shield himself from personal liability for the entity's contractual obligations. *See Plan B Holdings, LLC v. RSLLP*, 681 S.W.3d 443, 458 (Tex. App.—Austin 2023, no pet.). This shielding is permitted by law and is an essential reason that entrepreneurs form business entities. *See id.*

Legal separateness also affects personal jurisdiction. Because an entity is ordinarily legally separate from its owner, personal jurisdiction over one does not alone support personal

jurisdiction over the other.[4]  *See Helmer v. Rusco Operating, LLC*, No. 03-21-00148-CV, 2022 WL 963236, at \*5 (Tex. App.—Austin Mar. 31, 2022, no pet.) (mem. op.); *see also PHC–Minden, L.P. v. Kimberly–Clark Corp.*, 235 S.W.3d 163, 165 (Tex. 2007) (disapproving of when courts "impute contacts of related entities to each other, when mere relatedness is" insufficient); *Schlais v. Valores Corporativos Softtek, S.A. de C.V.*, No. 03-11-00188-CV, 2012 WL 1499488, at \*8 (Tex. App.—Austin Apr. 25, 2012, no pet.) (mem. op.) (disapproving of per se rule of imputing corporation's contacts to shareholders because former is "separate legal entity that shields its owners and shareholders from the jurisdiction of a foreign jurisdiction, even if the corporation itself is within the court's jurisdiction" (quoting *Cappuccitti v. Gulf Indus. Prods., Inc.*, 222 S.W.3d 468, 481 (Tex. App.—Houston [1st Dist.] 2007, no pet.))).  Nonresident owners or officers are generally protected from the exercise of jurisdiction when their contacts with the forum state were on the entity's behalf.  *See Furie Petrol. Co. v. Ben Barnes Grp., L.P.*, No. 03-14-00181-CV, 2015 WL 6459606, at \*4 (Tex. App.—Austin Oct. 23, 2015, no pet.) (mem. op.).  When agents negotiate contracts for their principals in Texas, it is the principal who does business here, not the agent.  *Id.*  Thus, when an owner and manager of an entity was alleged to have engaged in "general business contacts" in Texas for the entity, like travel here and attending meetings here for the entity's business, the allegations were legally insufficient to support specific personal jurisdiction over the individual "because they are *[the entity]'s* contacts with Texas, not" the individual's.  *Leesboro Corp. v. Hendrickson*, 322 S.W.3d 922, 929 (Tex. App.—Austin 2010, no pet.).

---

[4] There must in some cases be proof to support "jurisdictional veil-piercing" before personal jurisdiction over an entity necessarily entails personal jurisdiction over related persons. *See, e.g.*, *PHC–Minden, L.P. v. Kimberly–Clark Corp.*, 235 S.W.3d 163, 172–76 (Tex. 2007).

Specific-jurisdiction analysis involves the co-equal components of purposeful availment and relatedness. *LG Chem Am.*, 670 S.W.3d at 347. Relatedness requires that the plaintiff's claim arise out of or relate to the defendant's contacts with the forum. *Id.* The plaintiff must show a "substantial connection" between the defendant's contacts and the operative facts of the litigation. *Id.* (quoting *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 585 (Tex. 2007)). While the plaintiff need not establish a strict causal relationship between the defendant's contacts and the plaintiff's claim, "neither is it the case that anything goes." *Id.* There must be "real limits" on relatedness to adequately protect the due-process rights of nonresidents. *See id.* (quoting *Ford Motor*, 592 U.S. at 362). That the defendant might have other forum-state contacts unrelated to the underlying claims is irrelevant. *See PHC–Minden*, 235 S.W.3d at 165 ("Minimum-contacts analysis is easily muddled . . . as courts frequently import contacts relevant to one type of jurisdiction when deciding the other.").

The purposeful-availment inquiry involves three features: (1) the relevant contacts must be those of the defendant, and the unilateral activity of another person or a third party is not pertinent; (2) the contacts must be purposeful rather than random, fortuitous, isolated, or attenuated; and (3) the defendant must seek some benefit, advantage, or profit by "availing" itself of the jurisdiction. *Searcy*, 496 S.W.3d at 67. The analysis focuses on the quality and nature of the defendant's contacts, not their number. *Id.* The mere fact that a defendant's conduct affected plaintiffs with connections to the forum state is legally insufficient to support jurisdiction. *See id.* at 67–68. Nor does the bare fact that defendants have received some benefit, advantage, or profit

from Texas necessarily mean that they have purposefully availed themselves of the state. *See Schlais*, 2012 WL 1499488, at *8. The happenstance of a plaintiff's connection to Texas, then, will not alone suffice to confer specific jurisdiction over a defendant who merely deals with a Texas resident during some unrelated endeavor. *Searcy*, 496 S.W.3d at 68. Courts have rejected the idea that simply because a defendant knows that the effects of his actions will affect someone who lives in a state, there is specific jurisdiction over the defendant in that state. *Id.* at 76.

### D

JR Land relies on the following allegations of Schain's contacts with Texas to attempt to establish personal jurisdiction over Schain for this suit:

a. Schain was actively involved in the negotiation of the Agreement.

b. Schain personally toured the tract that was the subject of the Agreement to inspect it.

c. Schain routinely and regularly filed franchise-tax Public Information Reports "on behalf of New Mill" with the Texas Secretary of State.

d. Either or both of JR Land and New Mill were to perform the Agreement in Texas.

e. New Mill maintained a Texas registered agent for service of process.

f. New Mill filed notice in Dallas and Travis Counties of an assumed or fictitious name.

g. Schain has engaged in real-estate business dealings in Texas related to New Mill, and he and Watters talk weekly about managing New Mill's real-estate business.

h. Schain has engaged in real-estate business dealings in Texas related to other, Texas LLCs, each of which maintain Texas registered agents, three of which own Texas real estate, in at least some of which Schain serves with Texas residents, and from at least one of which he has received financial distributions.

8

He and Watters speak weekly about managing Texas real-estate business unrelated to New Mill. They have "do[ne] quite a few business deals" together.

    i. Schain owns an interest in another Texas LLC, which does business in Texas, maintains a registered agent in Texas, and owns real estate in Texas.

    j. Schain works with another Texas resident "regarding investing in Texas real estate ventures."

    k. Schain has at all times relevant held an owning membership interest in, and served as a manager for, New Mill.

    l. Schain was an owning member of New Mill when the Agreement was executed and in that capacity approved the Agreement.

    m. Schain has traveled to Texas many times over the past decade.

    n. JR Land is a Texas LLC and is managed by two Texas residents.

Considering the applicable law above, we conclude that the allegations are legally insufficient to support specific personal jurisdiction over Schain for this suit. As we detail below, allegations a. through g. cannot support specific jurisdiction because they are not Schain's contacts with Texas, they are New Mill's (or JR Land's). Allegations h. through j. fare no better because they bear no substantial connection to the suit's operative facts. And allegations k. through n. do not suffice because they suffer from either of these problems or from the failure to amount to purposeful availment of the privilege of conducting activities in Texas. *See Kelly*, 301 S.W.3d at 659 (stating that defendant can show that even if plaintiff's allegations are true, "the evidence is legally insufficient to establish jurisdiction; the defendant's contacts with Texas fall short of purposeful availment; for specific jurisdiction, that the claims do not arise from the contacts; or that traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction").

9

*1*

That New Mill was to perform the Agreement in Texas, that it maintained a registered agent here, and that it filed assumed-name notices in Dallas and Travis Counties does not support personal jurisdiction over Schain. *See Helmer*, 2022 WL 963236, at *5 (personal jurisdiction over owner cannot be based solely on personal jurisdiction over owned entity). And whether JR Land was to perform the Agreement here is irrelevant—Schain has no alleged ownership or management relationship with JR Land. *See Searcy*, 496 S.W.3d at 67 ("[T]he relevant contacts are those of the defendant, and the unilateral activity of another person or a third party is not pertinent.").

The result is the same for the allegation that Schain was actively involved in negotiating the Agreement. New Mill, not Schain, is the buyer party under the Agreement, so his negotiating for New Mill is *its* contact, not his. *See Furie Petrol.*, 2015 WL 6459606, at *4. Same for the allegation that Schain personally toured the tract at issue to inspect it—no evidence shows that he did this for any purpose other than representing New Mill's interests in its decision about whether to buy the tract. *See id.* (nonresident owner or officer is generally protected from exercise of jurisdiction when individual's contacts with forum state were made on behalf of entity). The allegations about Schain's filing Public Information Reports and conducting business dealings in Texas, including frequent conversations with Watters, are tied to New Mill's behalf. Therefore, Schain's efforts in these respects also are New Mill's contacts with Texas, not his. *See id.*; *Leesboro*, 322 S.W.3d at 929 (owner and manager's engaging in "general business contacts" in Texas for entity "provide[d] no basis for asserting specific jurisdiction over [owner and manager] because they are *[entity]'s* contacts with Texas, not" owner and manager's).

10

JR Land's arguments about these allegations do not contest whether the contacts are New Mill's or Schain's under the ordinary rule of legal separateness. Instead, JR Land argues that ordinary legal separateness does not apply because of two Tax Code statutes, Sections 171.252 and 171.255. They deal with the consequences both for certain entities whose right to transact business in Texas is lost for failure to file a franchise-tax report or to pay a franchise-tax levy or penalty and for those entities' members or managers. *See* Tex. Tax Code §§ 171.251–.258; *see also General Dynamics Corp. v. Bullock*, 547 S.W.2d 255, 257–58 (Tex. 1976) (saying that functions of franchise tax are payments for privilege of carrying on business in Texas and for right to invoke protection of local government). Such a failure can lead to forfeiture of an LLC's right to transact business in Texas. *See* Tex. Tax Code §§ 171.251–.2515. When this right is forfeited, the LLC's "right to sue or defend in a court of this state" is denied,[5] and "each director or officer of the corporation is liable for each debt of the corporation that is created or incurred in this state after the date on which the report, tax, or penalty is due and before the corporate privileges are revived." *See id.* §§ 171.252(1)–(2), 171.255(a). LLC rights forfeited in this way may be revived. *See id.* §§ 171.253, 171.255(a), (d), 171.258; *Amazing Paws, LLC v. Pedraza*, No. 01-24-00475-CV, 2026 WL 616303, at *6 (Tex. App.—Houston [1st Dist.] Mar. 5, 2026, no pet.) (mem. op.); *Lavizadeh v. Moghadam*, No. 05-18-00955-CV, 2019 WL 6799756, at *6 n.10 (Tex. App.—Dallas Dec. 13, 2019, no pet.) (mem. op.).

---

[5] This "right to defend" is a defendant's right to seek affirmative relief in a suit, not the defendant's right merely to defend against a plaintiff's affirmative claims. *See Hardwick v. Austin Gallery of Oriental Rugs, Inc.*, 779 S.W.2d 438, 441 (Tex. App.—Austin 1989, writ denied) (citing *Bryan v. Cleveland Sand & Gravel Co.*, 139 S.W.2d 612, 613 (Tex. App.—Beaumont 1940, writ ref'd)), *superseded by statute on other grounds as recognized in Bair Chase Prop. Co. v. S & K Dev. Co.*, 260 S.W.3d 133, 140 (Tex. App.—Austin 2008, pet. denied); *Mello v. A.M.F., Inc.*, 7 S.W.3d 329, 331 (Tex. App.—Beaumont 1999, pet. denied) (similarly citing *Bryan*).

JR Land argues that both the statute denying the "right to sue or defend in a court of this state" and the statute making "each director or officer of the corporation" liable apply here because New Mill's right to transact business in Texas was forfeited. This forfeiture, JR Land says, left Schain with "no corporate form to cloak [his] conduct under the guise of corporate action" because New Mill "no longer existed."

We disagree, for three reasons. First, Texas's long-arm statute already extends as far as due process allows. *See Goldstein*, 690 S.W.3d at 294. The Tax Code can offer no further constitutionally permissible reach. Therefore, analysis of Texas statutes is beside the point for purposes of assessing whether due process allows a Texas court to exercise jurisdiction over Schain for this suit. *See id.* ("[F]ederal due process requirements shape the contours of Texas courts' jurisdictional reach."); *PHC–Minden*, 235 S.W.3d at 174 ("[P]ersonal jurisdiction involves due process considerations that may not be overridden by statutes or the common law.").

Second, New Mill is formed not under Texas law but under, according to JR Land's position and to Schain's assumption in this appeal, Delaware law. Texas law thus may not govern whether New Mill's separate legal existence has ceased. *See* Tex. Bus. Orgs. Code §§ 1.002(28), 1.102–.105; *Armour Pipe Line Co. v. Sandel Energy, Inc.*, 546 S.W.3d 455, 461 (Tex. App.—Houston [14th Dist.] 2018, pet. denied); *Country Cupboard, Inc. v. Texstar Corp.*, 570 S.W.2d 70, 72 (Tex. App.—Dallas 1978, writ ref'd n.r.e.). JR Land has provided us no Delaware law to support a conclusion that New Mill has ceased as a separate legal entity and has provided us no evidence of Delaware authorities' having effected the dissolution, termination, winding up, or the like of New Mill. No evidence shows that New Mill "no longer existed."

Third, Sections 171.252 and 171.255 do not purport to end the legal separateness of a business entity so that the entity's nonresident owner can then be haled into a Texas court.

12

*See, e.g.*, *Hardwick v. Austin Gallery of Oriental Rugs, Inc.*, 779 S.W.2d 438, 441 (Tex. App.—Austin 1989, writ denied) (saying of forfeiture under relevant statutes that although it affects some of entity's privileges, it "does not amount to a forfeiture of the corporation's charter"), *superseded by statute on other grounds as recognized in Bair Chase Prop. Co. v. S & K Dev. Co.*, 260 S.W.3d 133, 140 (Tex. App.—Austin 2008, pet. denied). As we said above, the legal separateness of a business entity affects liability rules and personal-jurisdiction rules. Liability rules are distinct from personal-jurisdiction rules. *See Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 791 (Tex. 2005); *Proppant Sols., LLC v. Delgado*, 471 S.W.3d 529, 539 (Tex. App.—Houston [1st Dist.] 2015, no pet.). Their distinction is why the Supreme Court of Texas has taken pains to distinguish veil-piercing for purposes of liability from veil-piercing for purposes of personal jurisdiction. *See PHC–Minden*, 235 S.W.3d at 174.

And their distinction arises at least in part from the requirements of due process. Even if a Texas factfinder may hold a person to be liable for a claim, that liability still does not mean that a Texas court appropriately may exercise jurisdiction over the person:

> Although the trier-of-fact may ultimately conclude that Kelly and Hofstatter violated the Texas Trust Fund Act and committed fraud, the mere commission of an act does not grant Texas courts jurisdiction over the actor. Rather, as we have frequently emphasized, the requirements of due process must be upheld, particularly the connection between the defendant, the forum, and the litigation in the specific jurisdiction context.

> The majority in the court of appeals focused on a corporate officer's potential for individual liability under the Texas Trust Fund Act . . . . But the mere existence of a cause of action does not automatically satisfy jurisdictional due process concerns. A state is powerless to create jurisdiction over a nonresident by establishing a remedy for a private wrong and a mechanism to seek that relief. Instead, jurisdictional analysis always centers on the *defendant's* actions and choices to enter the forum state and conduct business. The concept of minimum contacts is rooted in the notion that a defendant may reasonably be haled into the forum state's courts when it purposefully, not randomly or fortuitously, engages in activities

there. Thus, merely pleading that Kelly and Hofstatter violated the Texas Trust Fund Act is not enough; GIC must also plead and, when challenged by the defendants, present evidence that the Officers' relevant acts (i.e., those connected to GIC's claims) occurred, at least in part, in Texas.

*See Kelly*, 301 S.W.3d at 660–61 (citations omitted).

Sections 171.252 and 171.255 say nothing of personal jurisdiction. *Cf. Hardwick*, 779 S.W.2d at 441 (concluding that Section 171.252 is not jurisdictional in the sense that it does not deprive Texas courts of jurisdiction). Statutes setting forth the consequences of business entities' franchise-tax failures to the entities' members or managers are, in contrast with statutes generally, to be strictly construed. *See Schwab v. Schlumberger Well Surv'g Corp.*, 198 S.W.2d 79, 81 (Tex. 1946); *Wilburn v. State*, 824 S.W.2d 755, 760–62 (Tex. App.—Austin 1992, no writ). And Section 171.252 itself imposes nothing on entity members or managers because it is Section 171.255 that serves that function. *See* Tex. Tax Code § 171.252(2); *Suntide Sandpit, Inc. v. H & H Sand & Gravel, Inc.*, No. 13-11-00323-CV, 2012 WL 2929605, at *3 (Tex. App.—Corpus Christi–Edinburg July 19, 2012, pet. denied) (mem. op.). Therefore, Section 171.255's silence about personal jurisdiction plus the requirement that the statute be strictly construed together mean that it does not grant personal jurisdiction over a defendant like Schain:

> Section 171.255 does not create a basis for asserting personal jurisdiction over a nonresident officer or director of an entity that enjoys or once enjoyed corporate privileges in Texas. Notably, Section 171.255 does not mention jurisdiction in any way. The "central concern of the inquiry into personal jurisdiction" is "the relationship among the defendant, the forum, and the litigation." Even if the plaintiff proves that the entity's privileges have been forfeited, that fact only establishes the potential liability of the entity's officers or directors, not personal jurisdiction over those persons. This is because the defendant's potential liability to the plaintiff is not dispositive of our personal-jurisdiction inquiry. The crucial distinction between liability and personal jurisdiction must be observed because "personal jurisdiction involves due process considerations that may not be

14

overridden by statutes or the common law." Given the absence of any mention of jurisdiction in Section 171.255, the important distinction between liability and personal jurisdiction, and the rule that Section 171.255 should be "strictly construed," we conclude that Section 171.255 does not provide an independent basis for personal jurisdiction over Gross, a nonresident defendant.

*ACS Partners, LLC v. Gross*, No. 01-11-00245-CV, 2012 WL 1655547, at *4 (Tex. App.—Houston [1st Dist.] May 4, 2012, no pet.) (mem. op.) (citations omitted); *see also Virtual Healthcare Servs., Ltd. v. Laborde*, 193 S.W.3d 636, 644 (Tex. App.—Eastland 2006, no pet.) (rejecting argument that Section 171.255 supported personal jurisdiction over corporate shareholder and director: "[N]otice that they may be liable for corporate debts does not justify a conclusion that nonresident officers and directors could reasonably anticipate being called into a Texas court. [Corporation] 'purposefully availed' itself of the benefits and protections of the laws of Texas; the same cannot be said of [sole shareholder and director] under the undisputed facts.").

JR Land counters by arguing that this reading of Sections 171.252 and 171.255 makes them meaningless or superfluous, but we are not persuaded. The canons of statutory interpretation instructing that all statutory language must be interpreted so that none of it is rendered meaningless or superfluous must, like all interpretive canons, be applied with judgment, discretion, and careful regard to context. *Ohio Cas. Ins. Co. v. Patterson-UTI Energy, Inc.*, 703 S.W.3d 790, 796 (Tex. 2024). That the statutes here do not impose personal jurisdiction on parties like Schain does not mean that the statutes cannot operate against resident or nonresident defendants over whom Texas courts do enjoy personal jurisdiction. There is some meaning and operation for Sections 171.252 and 171.255 in this way.

15

We conclude that allegations a. through g. are New Mill's (or JR Land's) contacts with Texas and not Schain's and thus are legally insufficient to support personal jurisdiction over him for this suit.

*2*

Nor are allegations h. through j. legally sufficient—each is an allegation unrelated to the operative facts of this suit. *See LG Chem. Am.*, 670 S.W.3d at 347 (plaintiff must show that defendant's contacts bear "substantial connection" to operative facts of litigation). Each allegation concerns business entities *other* than New Mill or business *other* than the land-sale agreement that is the subject of JR Land's claims. There is no evidence that Schain's liability for JR Land's claims in this suit arose from any of these non-New Mill matters. Therefore, these allegations are legally insufficient to support specific personal jurisdiction here.

*3*

The remaining allegations fail one or more of the prior tests or fail the purposeful-availment test. That Schain may have traveled to Texas for reasons unrelated to New Mill means that the travel is not sufficiently related to the operative facts of the suit. And if he traveled to Texas for New Mill's purposes or for purposes of the Agreement, then that contact with Texas is New Mill's rather than his. There is no allegation that he ever committed any tortious or fraudulent conduct during his travels to Texas. *Cf. Ennis v. Loiseau*, 164 S.W.3d 698, 707 (Tex. App.—Austin 2005, no pet.). It also is irrelevant that JR Land is a Texas LLC and is managed by Texas residents. Those contacts belong to JR Land, not to Schain.

This leaves only the allegations that Schain is an owner and manager in New Mill and approved its entry into the Agreement in those capacities. Just as with negotiation of the

16

Agreement, his approval of New Mill's entry into the Agreement is New Mill's contact and not his—New Mill is the party to the Agreement alongside JR Land. *See Furie Petrol.*, 2015 WL 6459606, at \*4; *Leesboro*, 322 S.W.3d at 929. And his ownership interest in New Mill is legally insufficient. *See Schlais*, 2012 WL 1499488, at \*8 (rejecting argument that shareholder ownership on its own can support specific personal jurisdiction: "Stock ownership and the related right of control that stock ownership gives to stockholders are insufficient to destroy the distinctness of corporate entities for jurisdictional purposes." (quoting *Commonwealth Gen. Corp. v. York*, 177 S.W.3d 923, 925 (Tex. 2005) (per curiam))). The same goes for his management role in New Mill. *See Proppant Sols.*, 471 S.W.3d at 534, 541, 543 (affirming grant of special appearance for nonresident even though she was alleged to be officer of defendant entity and to have been "involved in setting up a logistics chain in Texas to import [product sold by defendant entity to plaintiff] for ultimate destination in Pleasanton, Texas"); *Luxury Travel Source v. American Airlines, Inc.*, 276 S.W.3d 154, 165–67 (Tex. App.—Fort Worth 2008, no pet.) (despite concluding that entity was subject to personal jurisdiction, otherwise concluding that entity's sole officer and principal was not subject to personal jurisdiction for lack of Texas contacts).

\*     \*     \*

None of JR Land's allegations about Schain's contacts with Texas, whether individually or in aggregate, are legally sufficient to support specific personal jurisdiction over

him in Texas for this suit.  We thus reverse the trial court's denial of his special appearance and render judgment dismissing him from the suit.

_____

Chari L. Kelly, Justice

Before Chief Justice Byrne, Justices Kelly and Ellis

Reversed and Rendered

Filed:  June 5, 2026